Good morning, Your Honor. Assistant State's Attorney Christian Duffy on behalf of Cook County Department of Revenue. We'd be asking for 15 minutes for argument and 5 minutes for rebuttal. Thank you. Good morning, Your Honor. Jim Gaughan on behalf of the Chicago Bears. We'll have 20 minutes for our response. Thank you. Thank you. If you could begin Ms. Duffy. Certainly. May it please the Court. I'm Assistant State's Attorney Christian Duffy and I represent the Cook County Department of Revenue. We are here today because the Administrative Hearing Judge in the underlying case properly found that the amenities provided by the Chicago Bears premium seating area are subject to the Cook County Amusement Tax. Now whether or not those premium seating areas at Soldier Field are in fact subject to the Amusement Tax is a mixed question of law and fact and a clearly erroneous statement. How is it a mixed question of law and fact? Isn't you saying in your own brief that facts really aren't in much dispute, are they? Your Honor, it is a mixed question of law and fact because the law in question here is the Ordinance 74392A which imposes a 3% tax on the admission or other charges to enter, witness, review and amusement, which in this case is a football game at Soldier Field. But what the ALJ did was construe the ordinance. Isn't that a question of law? Well, Your Honor, what he did was he applied the facts that he was given at the hearing. He heard an extensive amount of facts given by numerous witnesses including the auditor in this case from the Cook County Department of Revenue who was a Med Prior. He heard from the Treasurer of the Chicago Bears, Karen Murphy. He heard from the Director of Premium Hospitality. But in every case you're going to have people hearing the facts, but the facts aren't in dispute. Those facts aren't in dispute. I thought the facts were stipulated. No, Your Honor, not all the facts are stipulated. There was a list of some amenities that were listed out by the Chicago Bears as what they give as their amenities, which we're suggesting to you is the other charges here. And in fact, those other charges, when applied to the law, it would be a question of a mixed question of law and fact. How in fact those facts, which aren't all stipulated to, which came out at the hearing, are applied to the law before us. Well, then tell me how on page 23 of your brief when you say, as our Supreme Court has held, the interpretation of a statute or an ordinance is a question of law. Your Honor, the ordinance itself is a question of law, but in this case it is a mixed question of law and fact because it's how those facts, which were presented at the hearing, are applied to that law. So give me an example that wouldn't involve just simply a question of law. There are no facts in the case. Your Honor, even if we were to, respectfully, even if it is a de novo review here because it is just a question of law, the plain language of this ordinance clearly states that it is the admission or other charges to enter, witness, or view an amusement in Cook County. And when we look at that, just the specific language here, that admission or other charges, we still prevail here, Your Honor, because those other charges are specifically what we're talking about here. The other charges, we have the admission, which is the state, what's happening here is the bears have bifurcated their ticket price into what they've determined to be a stated ticket price and these other charges. Now whatever semantics you use, whatever you call those other charges, whether you call them the game day experience, which is the bears own term, whether you call them a bundle of amenities, or you call them other charges, they are interrelated with the admission to enter, witness, or view the Chicago Bears football game. And therefore they are subject to the Cook County Amusement Tax. The parking? That's an admission to the event? Your Honor, the parking actually is a separately stated amenity which has been singled out. What about the private bathroom and the luxury suite? That's an admission to view the event? Your Honor, we would suggest to you that everything that is those other amenities that are listed out here in either the club premium area or the luxury seating boxes are all inseparable from the ability to enter, witness, or view the amusement in this case. You cannot just buy the right to use that wonderful bathroom if you're sitting on the other side of the stadium. You cannot just buy the right to stand in the burrito line or to make your reservation for the Sunday brunch. In fact, you can't even get to your seat without entering the club and you can't get to your seat in the luxury box without entering that luxury box. What about the fact that it's a license that you have and you can use for the luxury suites, you can use those for business meetings? That doesn't have anything to do with the Bears. Well, Your Honor, you cannot have your business meeting on a Tuesday. Respectfully, Your Honor, you are there to watch a football game. The Bears are not in the business of providing a conference center for you to have meetings on Tuesday or Wednesday. If your client cancels on Sunday, you can't have them there on Thursday. There is no value to the luxury suite or the club seats without the football game. Except for the fact that you can use them for special events at Soldier Field. You would have the right of first refusal. They are not included. Well, but that's an amenity. That's something that doesn't include the Bears if you're going to go watch some concert or a soccer game. Well, Your Honor, it is an exhaustive list of the right to enter, witness, or view an amusement. And that amusement is a wide variety of things which are listed out. If you look at the statute, it's football games, soccer games, amusement, whatever it is. You're right with that luxury box. Respectfully, Your Honor, it is to view that amusement. And it is simply not separable from the seats which are located in that luxury box. And, in fact, this court, the First District Court, recently ruled in Statsville v. City of Chicago that that case had to do with the personal seat licenses at Soldier Field. And the plaintiff in that case brought a class action saying that those PSLs, which were the bundle of rights here, were separate from the right to enter, witness, or view. And what the court said in Statsville was they're not separate because there is absolutely no value to that PSL without the right to witness the football game. They are not separable at all from that right. And there's absolutely no value to the PSL without the football game itself. And, therefore, it is separate to the amusement tax. Well, let me ask you about parking for a minute. Because one of the reasons, if I understand the record correctly, that the county discounted the amount it was seeking to tax for the luxury suites is that the county assumed, as it turned out wrongly, that food and beverages were included, but also that parking was included. And that's one of the bases that the ALJ stated for imposing the 60% tax as opposed to 100%. What parking is included in the club seats, and yet there is no discount? The tax is imposed on 100% of the value of those seats. How do you reconcile that? Well, Your Honor, first of all, the ALJ in this case heard all the evidence that was presented. When the original audit was done, the Chicago Bears submitted two skybox contracts. There's 133 skyboxes at Soldier's Field. And the two that they submitted, in fact, included food, parking, and beverages. Those were for the Skyline suites. That's correct. Those were for the Skyline suites. We later learned that not all of the suites provide food and parking. So after hearing all the evidence, the administrative hearing judge allotted 40% for those amenities, the food, the parking, and the beverages, to the other amenities, and 60% acknowledging that the Bears' primary business here is football. Now, with regard to your question with regard to the club seats, the club seats, no information was ever given to the auditors about the parking. The first time that the parking being included in the club seats ever came up was on the eve of trial. And, Your Honor, in this case, the judge had an opportunity to hear that evidence, and he took it upon himself not to afford any reticence to the Bears with regard to that parking. However, at no time during the audit was any information published. There's nothing on their website. There's nothing that would suggest parking was included up until the eve of trial. And what is your position on the relevance of the box office statements that the Bears prepare for sharing revenue among the NFL teams? Your Honor, the NFL teams are not a taxing body. Cook County is a taxing body here, and what happens with the NFL is the Bears are required to share 34% of the stated ticket price. So it is in the Bears' interest to keep that stated ticket price artificially low and to put the bulk of their profit-making into the club premium and the luxury box. This is evident when we look at the suites. Because with a suite, you pay, let's say, $15,000 per suite for a game. With that, you get 20 tickets. You have yourself, and you have 19 of your best friends go to the game. Now, the Bears have decided those tickets are worth $100 a piece. So $2,000, they're saying, is the admission to go to that luxury box and sit and watch the game. And the other $13,000 are these amenities. So the result here is absurd. So even going back to, Your Honor, what you had asked earlier about if we just look at the law here, that law, if you interpret it the way the Bears are suggesting, ends up with absurd results. To me, the question before us is how does one interpret the words, or other charges paid for the privilege? That's really what we're talking about. That's correct. So if you were sitting here and you had to come up with a standard that could be used so that in the future, no matter what the event might be or the particular situation, there would be some kind of standard that could be used to determine what or other charges paid for the privilege means. How would you define that? Your Honor, I think that language when we read the statute is very clear, in that it's an admission charge or other charges. And it's just for a situation like this, where you have something that's the stated ticket price, what the Bears have termed the stated ticket price, but then they decide to bifurcate their ticket into a whole other set of amenities that are not separable at all from those admission charges. But that doesn't really give me a standard. You're just repeating what the facts are. Well, Your Honor, in subsection E, we do allow for other non-amusement charges. And therefore, anything that you could list out as another non-amusement charge could be considered under section E and would be separated out. As we said before, the parking, the food, other items that are taxed federally, municipally, or by the state are all separated out. There is a way to separate those out from the admission or other charges. Well, how do you define which amenities are included and which amenities are not? Well, Your Honor, the burden here lies with the Bears. Even though they suggest that it was the county's responsibility, the bears, or I'm sorry, the county, in fact, brought this case, and they invited the Bears to bring forth any evidence they had. That's how they ended up with the skyline suite contract. They looked at all the evidence presented by the Bears, and if the Bears had other evidence that would have suggested that something was non-amusement, then that would have been considered under subsection E. However, in this case, and at the testimony that was elicited at trial from both the treasurer, Karen Murphy, and the director of prison and hospitality, Mr. Kellner, everything that's going on in those premium seats and the luxury boxes is, in fact, for amusement purposes. It's integral to the amusement being provided. The Bears testified that it's important to be profitable, that the amenities that they are presenting were for their fans to make them in the top eight NFL teams, and that it is very important to them to have the best entertainment at a football stadium. In fact, if they look at other stadiums and, in fact, want to have the most entertaining premium club seats and luxury skyboxes with all the amenities that they are providing, and so on the Bears' own words, those amenities are, in fact, part of the amusement. In fact, they even sent out a survey at the end of the season asking about people's game day experience, meaning the entire experience at Soldier Field. And where in the ordinance does it include game day experience? No, it doesn't. It's under the other charges, though. Other charges is however the Bears or whoever the particular amusement might be decides to term those other charges. That's why it's an open and broad term, admission or other charges. Other charges has a wide variety of things that encompasses. So you have what we call the bundle of amenities, you call it the other charges, you call it the totality of the game day experience. Whatever the term the event chooses to use, it's a matter of semantics and it all falls under the other charges. Otherwise, the use of the term other charges would be fairly superfluous here. And so do you disagree with the ALJ's determination that the statute is ambiguous? I think that the ALJ, we agree with him in that that term has multiple meanings. And for the Bears in this case, it is the game day experience and that term is actually their own term. They didn't say stated charges and other charges because obviously they don't want to be under the statute where it says other charges. So they made it stated charges and what we term the game day experience, which is their own language. Go ahead, sorry. In terms of the luxury suites, the tickets don't state any price on them, do they? That's correct. The luxury suites just received 20 tickets and the Bears themselves have decided the value of those tickets are whatever they are. And that's what they decided to pay tax on. So they basically decided what they are going to pay based on what they feel like paying at that time. But they are acknowledging that the actual seat in the luxury seats and in the club section are being ticket priced at the highest rate of any ticket in the stadium. So they are already paying the highest price per ticket, the taxes on the highest price per ticket in the stadium. That has to do with where you view in the stadium. So there is the west side, which the Bears have told us that they are setting the ticket price at the highest price of the west side of the stadium, which would be the 50-yard line. And you can see how this gets absurd when you get over to the east side of the stadium where the club seats are because all of the tickets, they've got priced at that 50-yard line price. However, your club price, whether you are in club 1, 2, or 3, goes out from that 50-yard line. So the most expensive tickets there are club 1, the second most are club 2, the third are club 3. So what they are really doing is taking those nicer seats and they are hiding the price in your seating and in your premium. Is it possible that the county just wrote a poorly drafted ordinance that they just missed the boat on taxing up these special areas? Your Honor, the county's ordinance is broad and it allows for multiple things and multiple different amusements because this is a broad county and there are lots of different amusements that take place here. And in different situations, you may have different things that need to be taxed at different rates. As we talked about before with the parking, if you only get parking, maybe that person you are going to allot for 90-10. Maybe you are just giving something else and the evidence is going to show that it should be allotted 80-20 or 55-45. What we've done is allow for a broad range of things and allowing the petitioner to bring in whatever the incidents they want and present it. I think in this case, the ALJ was more than fair in allotting 60% for the ticket price and 40% for the amenities and just taking into account that their primary business is football. But there is a wide flexibility here. So if you are giving food and parking at one stadium and you are only giving parking somewhere else and you are not giving anything somewhere else, all of that can be taken into consideration and they can be prearranged with the Cook County Department of Revenue as well. The ALJ, though, did not make that distinction on the club seats. It's not 60, it's 100%. And there are several amenities on the club seats. Why wasn't there a difference? Well, Your Honor, the only thing that was brought up as a separate amenity was the parking. And again, as we've talked about before, at the EGLE trial. And the only thing that was submitted on behalf of the Chicago Bears in relationship to the parking were some flyers that said if you're in Club 1, you get three parking spaces. If you're in Club 2, you get two parking spaces. If you're in Club 1, you get one parking space. There was nothing in any type of written contract. There was nothing in any of the publicity materials that would back up that parking. Now, the ALJ had an opportunity to hear all the evidence in this case and that was his determination with regard to the club seats. So with the parking, you're saying that the Bears did not put in any evidence of any value?  They did not put in any evidence of the value of that parking. The statute or the ordinance says privilege to enter, witness, or view. It uses those three words. That's correct. What's the difference between those three words? I believe those words encompass everything. So they encompass the person who enters the stadium and decides never to go out to their seat. And as we talked about before with the business meeting, they stand in that club the entire time. They still have to pay the full amount for their ticket. Although you can see the full stadium field, we did take a tour with the ALJ of the entire soldier field, and you can see the field from inside the club. Same thing if you go up to the luxury side. If you decide never to go and sit in your outdoor area and look at the game, you're still there. You're witnessing the game. You can view it. Who's encountered, enter, witness, or view. You still have to enter into the club seat. You still have to enter into the luxury box to be able to use your tickets. And basically there is no value to those tickets without – I'm sorry. There's no value to those premiums without the right to view the game. There's also television monitors all over that side of the stadium. That's correct. You don't have to see it live. The players on the field, you can still see it on monitors. That's correct, Your Honor. There are 140 televisions, two of which are 20 feet wide. You won't miss a minute of the action. Whether you're standing in the burrito line or you're going to use the bathroom, you're going to see the game the entire time. Now, you might not see it on the field, but you are not going to miss a minute of the action. The same thing with the luxury boxes. There are televisions up there. Again, you won't miss a minute of the action. And if you're not a Bears fan and you want to watch another game, they do have the other games on as well. So you can see what all the competition is up to as well. I know the county takes the position that it's irrelevant, but the Bears rely on the city ordinance, which does have a definition of special seating. How does that factor into this case? The city's ordinance does account for 60 percent, 40 percent split on the luxury seats. And that is the result of a settlement negotiation between the Bears and the city. Now, we were not allowed to talk to the city about the specifics behind that settlement negotiation. However, we would tell you, first of all, the language of the city ordinance is very similar up until that point where they have the split, and that was relied on in Sasko versus the city of Chicago, where they're similarly talking about the language, which is the same, which is the ability for the admission or other charges to enter, witness, or view the stadium. And we believe that does apply here. With regard to the 60-40, we would tell you we are more flexible and more reasonable in that we allow for those situations where there are other charges that can be brought forth by the petitioner and proved up as non-amusement services. We would think that we have a broader statute that allows the taxpayer to, in fact, give any evidence they would wish to, to prove that they are not at that level. With regard to the club lounge, let's go through the amenities for a second. Year-round membership in a club that provides the exclusive right to purchase tickets to non-Bear game events is sheltered field. Any evidence in the value of that? There was no evidence, Your Honor, of the value of any of the non-amusement items. And what's your position on their value? Well, Your Honor, when asked at the hearing, they couldn't even list out any of the events that had been taking place at the stadium. They were given an opportunity to present any of that evidence of the non-amusement activities and they failed to do so. So include free game day programs and media guys? Again, there was no value that was given. Better, wider selection of food? Nothing. Again, there was no, and as we all know, that doesn't even include the food. It's just the ability to buy that better food. Counsel, you indicated that the county's ordinance is flexible. I think one could make the argument that it's really arbitrary, that it allows the county to just sort of traffic whatever it wants and doesn't really give any specific direction by not saying what is, as opposed to, say, the city ordinance. It defines special seating area, gives the rules, sets the rules flat out. Guys out there, if you're going to have an amusement event, here are the rules. The county is murky. It doesn't really say anything about special seating areas. It doesn't say what the taxes will be. It doesn't say how they'll be calculated. You're saying that the county just gets to pick and choose what they're going to consider to be an amenity and not an amenity? I'm finding that to be troublesome. Your Honor, what happens is that there is an audit in this case, and if it goes to hearing, the auditor presents their prima facie case for the county. At that time, as well as at the initial meeting with the bears, at each and every time, they are given an opportunity to present any non-amusement items and their value that they wish to present, and all of that is taken into account. And if they were to dispute that, it would go to hearing and circuit court and beyond. However, in this case, the bears chose not to do that. So I would submit to you that it is the burden on the bears or the taxpayer to present any non-amusement items that they wish to, along with their value, so those can be determined. Well, your brief lists the non-amusement items that are in the club membership and in the luxury licenses. That's correct. And no value was given, as we just talked about just a time. As to any of those amendments, there was no value given as to any of those. Well, I think one could argue that a value was given. It was any value that was over the $100 or whatever it was for the actual seat for the ticket. But there's no specific number that is given. And, in fact, the bears were unable to tell us how they priced their premium seating at all. They said it was basically what the market would bear, and they said they did not know what the cost increases were over the years. They couldn't tell us what any of the values to any of the things that they listed out were. Well, they were able to identify what those things were. The bar that's available in the luxury suites, the shorter lines that are available in the club level, the heating and air conditioning. Correct. They listed out a number of non-tangible items, but just because you call them a premium does not make them tax exempt. And, again, as we would say, they are really part of the admission because they are not separable from the right to enter, witness, or view that amusement. Well, I think my question is whether they're required to identify them as a premium and put a price on them or whether they're allowed to just say they're an amenity that is not necessary to view. You don't have to have air conditioning to view a bears game. Many people would love it. You don't have to have individual heat, you know, thermostats to watch a bears game. I know lots of people would love that. You can watch a bears game sitting outside freezing or sweltering. So, if they choose to define it as an amenity, what in this ordinance does not give them the right to do that? Well, there are two things. One, those items that you just listed out are not separable at all from the right to enter, witness, or view. You cannot just buy those amenities. So, if you have tickets, let's say, on the west side of the stadium, you can't go over and just belong to the club and cool down and just pay for those amenities. The only way that you get those amenities is part of the whole package here, the ability to enter, witness, or view at that state. Now, if you are hot and you decide to stand inside the whole time and the wonderful air conditioning like today would be great, then you still have to pay that entire ticket price. It's not separable. Secondly, they were never listed. I'm sorry, Your Honor. They were never separated. The bears the entire time have told us that those are for the enjoyment of their patrons. They've always told us those are part of the amusement. They're part of the entertainment. They're what makes part of the game day experience better. So, Your Honor, twofold, they are inseparable, and the bears themselves admit that they are for the enjoyment of the patrons. They're part of the amusement. Okay. The license agreement for a suite for one year is $150,000, and you have a license agreement for more. They're not just for one year. They're for multiple years. It was my understanding that within that license agreement, you are also required to pay for the 20 seats per game that are in that suite, whether you use them or not. You actually get a ticket to give to your guests, and sometimes you get the parking thing to give to your guests. So I'm having trouble understanding how it's not separable. I mean, you have 20 seats, and then you have the rest of this room. You have whatever seats that you've bought for the club level, one, two, three, or four, whatever it is, and then you get the rest of this club level. They're not the same thing. Sitting in a seat and watching a game and talking to your colleagues and having a drink are not the same thing. Why is it the bear's job to tell you how they're different? And where in this ordinance does it say that they're not allowed to claim that they're different, that they're not allowed to say that they're different? In fact, the plain language of the statute says that it's the admission or other charges, and we submitted to you that those are, in fact, those other charges, just what the ordinance has anticipated here, where they single out an admission, and then those other charges were inceptible, that you cannot buy separately, that have no value other than at a bear's game. Those cannot be separated out from that right to enter, witness, or view. And, in fact, they have absolutely no value. You can't go to the luxury box without a ticket. You cannot separate out that experience. And, in fact, I would submit to you that having that luxury box without the right to view the bear's game has absolutely no value. And, again, that was the holding in Stafford versus City of Chicago, that there's absolutely no value, that basically without the football game itself, it is, in fact, void, that value of those luxury amenities. Thank you very much. Thank you. And with that, we would ask you to uphold the ALJ's finding in this case. It was not clearly erroneous. It was rational and based on the evidence. Thank you. May it please the Court. Jim Gaughan on behalf of the Chicago Bears. In accordance with the plain language of the Amusement Tax Ordinance, the Chicago Bears have consistently paid the taxes on the amount it charged to enter and view Chicago Bears football games. Under Section 392A of the Ordinance, a tax is imposed only on the amounts charged to enter and view an amusement. That's the case whether you consider the… That's not really what it says. It says for the privileged. Yes, Your Honor. And aren't these items we've been discussing privileges? They are not the… It's a privilege to be able to go to a heated area. It is a privilege to go to a heated area, but it's not a privilege to enter and view the amusement. Well, it's part of it. I mean, if you… Usually, it's not separated out as that. You didn't put any evidence of the value of that privilege, did you? Your Honor, we did. So, first of all, the county is incorrect that there is no information regarding parking. There is information regarding parking. But it was a spreadsheet that was given to the county on the eve of trial, right? That's correct. And no backup. There was no evidence that during the tax periods in question, the bears actually assigned a value to those parking spaces, right? In connection with the separate charges, which under the amusement tax ordinance, Section E, specifically allows the bears to separate out the charges for the privilege of entering and view the amusement. My question is, during the tax periods from 2002 to 2007, is there any evidence that the bears in fact separated out parking privileges as non-amusement portion? They didn't, did they? Well, what they did, Your Honor, is with regard to the club suites, the club seats, on the ticket itself, there is a charge to enter and view, and then there is a charge for the amenity fees. Well, it's called the club privilege fee. That's correct. And it's a privilege. It is a privilege, Your Honor. But if you do not want to purchase that privilege, you are free to buy a ticket on the west side of the stadium. We're not talking about the west side. We're talking about entering this side of the stadium. And you can't enter this side of the stadium without those privileges. It's all one and the same. You can't visit the game and not take into the additional food availability, the heating, air conditioning, the ambiance, the seating arrangements. Is that correct? Two things, Your Honor. First of all, you can enter and view Soldier Field and have the same view of the action by purchasing a seat on the west side of the stadium without purchasing the amenities. But we're not talking about that. That's not the issue. You can't sit on the other side without the amenities. The fact is you can't enter that area and sit there without also receiving all those amenities that are listed. Your Honor, there are also a series of amenities, as stipulated to, that don't relate to the game day. Part of this, Your Honor – But, again, you put in no evidence of the value of those, did you? Yes, Your Honor, in the sense that, well, first of all, there is evidence of the parking. Second of all, the difference in the price of the ticket on the west side of the stadium for the exact same view versus the ticket in the club or the suite, the difference there is the value of that amenity. Let's talk for a second about the west side of the stadium. The Bears pay the tax on the graduated prices of the tickets, depending on how good your view is, right? That's right. Then you get to the club side, and all of the club tickets are valued at, in 2007, $77.20. And it's the club privilege fee that escalates according to how good a view you have, right? So, on the east side of the stadium, all the club seats, the premium seats, are valued at $77.20, whether you sit in the end zone or you sit on the 50-yard line, right? That's correct, Your Honor, because we are assigning the highest ticket price in the stadium that is neither a club nor a suite. So, it actually would include the east side of the stadium, where the first section is not a club or a suite. So, the highest price ticket is the assigned price to enter and view. And that practice, Your Honor, is consistent with the Bears' internal business practices and consistent with the NFL rules on revenue sharing. The ordinance doesn't have anything to do with the NFL rules, does it? Your Honor, it does in the sense that the county is suggesting that the separation here is arbitrary simply because we don't have a line item for the value of every single amenity. There is no requirement that there needs to be a line item for every single amenity. Instead, what the county is saying is this must be arbitrary because the Bears have not assessed a line item for every particular amenity. Instead of grouping the amenities together and identifying that the market values that group in this fashion. Let's talk about that for a second. Yes. The value of the amenities is greater than the price of the ticket. Isn't that correct? Yes. So, let's see what they're worth and what the evidence is. Year-round membership in the club provides exclusive right to purchase tickets to non-Bears events. There is no value to that, is there? And where is that value in the record? Of course there's a value to that, Your Honor. Where is it in the record? What evidence do the Bears present so that we can determine that value? Tell me where it is in the record. Your Honor, there is not in the record a line item by line item. I'm talking some evidence that you put in. I mean, you gave this value that's worth more than watching the Bears game. And maybe it is, the way the Bears have been playing. It depends. It might be worth more to be able to have a membership in the club and be able to get good food. Maybe that's worth a lot more than watching the game. But I don't think a lot of Bear fans think that way. So tell me where it is, an invitation to appreciation events, year-round. What's that worth? Your Honor, a line item basis there isn't in the record other than parking for the value of each amenity. I'm sorry. No, if you don't have a value in the record, to me that was your burden to show something. And apparently that shows the arbitrariness of what you're doing because you're charging as much as the market can bear for all these amenities, which are nothing more than souped-up privileges that they have on the other side. You know, you have to wait a longer line on the other side, on the west side, than you would on the east side. But you still get food. You still have some covering when you go underneath. I mean, what's the big difference? Your Honor, I think what I need to do is to walk the court through how this tax was assessed and in connection with the ALJ proceedings. In connection with the ALJ proceedings, the county had the view that everything that related to a game day experience was taxed. Those were the issues that were presented with the ALJ, which is does the amusement tax cover all game day experiences? That was the issue that was presented. We, the county, did not have any witness to testify that the bears' charges were arbitrary. To the contrary, the county's auditor, who was the only witness that the county called at the ALJ proceedings, specifically said that I'm disallowing these separate charges because there isn't an agreement between the bears and myself. And so that's the reason why the county tried to discount the bears' separation. Well, it's not. Taxpayers don't have any agreements with the taxing authorities, but they're bound by the laws that provide for the taxes. So the fact that the bears didn't have an agreement with the county isn't the issue. The fact is that the county said, prima facie, if you cannot get to a club seat, you cannot purchase the privilege of entering, witness, or viewing a bears' home game, but for paying the ticket price plus the club privilege fee, that's subject to the amusement tax. That's the county's position. That is the county's position, but it ignores Section E of the ordinance, which specifically allows the bears to separate out the charges to enter and view from other charges. From what other charges? Well, in this case, the amenity fees. Well, no, it doesn't say just any charges you want to call amenity. That's not what it says. Let me ask you the same question. I asked the county, what standard do we use in order to make this determination? How does the court set a standard that someone can look to to say whether an amenity is part of entering,  Right, Your Honor. So given that there's Section E, which allows the taxpayer to separate out charges to enter and view from other charges, and in this case, the amenity, so the taxpayer can separate out. It is clear. And what is interesting is that the county never addresses Section E throughout these proceedings. That's particularly telling. So given that we have, as a taxpayer, have the right to separate, for the county to now say that we have the burden is not the correct standard. You're the one that separated, though. You make that determination. On what basis did you make that determination? You still have to show it comes into that. You're taking the exemption. Is that your position? These are exempted. That's your position. Our position is, number one, Section E entitles us to separate this. That's not the issue. You're right. Number two is, did we separate this arbitrarily? The answer is no, because we followed established business principles under the NFL rules to do this very point of separating out the amounts charged to enter and view versus the amenity. It's the NFL rules that give you the authority to do this, and the county is bound by whatever you do under the NFL rules. It's not that the NFL rules give us the authority. What it is is that the NFL rules show that this separation isn't arbitrary. These are rules on the books. We didn't invent the separation. The separation is part of our business practices, and because it's a part of our business practices, this separation wasn't arbitrary. Where does it give you some precedent, the tax laws, that business practices give you an exemption to do whatever you want with regard to the taxing authority? You know, I'm not saying that there's an exemption. So, number one, we're entitled to separate. I'm going to get number three to answer your question. Number one, we're entitled to separate. Number two, we separated in accordance with established business principles. At that point in time, if the county wanted to rebut as arbitrary or unreasonable that separation, they could have done so, and they tried at the ALJ proceedings. And you know how they tried? Not by trying to poke a way at the line items. What they tried to do was to say that amusement means a game day experience, and that everything at the game that is charged is part of the tax. That is what happened at the ALJ proceedings, and that is the basis for the ALJ's ruling. If the permanent seat license that is necessary to purchase certain seats on the west side is part of the amusement for purposes of the city's amusement tax ordinance, then how are not the privileges associated with club seats and luxury seats also part of the amusement for purposes of the amusement tax ordinance? Right. So, you're referencing the Statsville opinion. So, first of all, I think it's worth noting as set forth in the Statsville opinion that the Chicago Bears did pay amusement taxes with regard to the initial transfers of the PSLs. Okay. So, we've heard information in these briefs that we've got this tax avoidance scheme and the like. That simply is not true. We paid those taxes. And as the court identified, they were taxes associated with the privilege to enter in view. There was no assessment of Section E. There was no separation out of whether some portion of the PSL relates to enter in viewing and another portion of the PSL relates to other rights. But we do have that in this case. We do have testimony in this case, books and records in this case, that identify what are the charges to enter in view, which are consistent with the Bears' business practices and NFL rules, and we have the amenity fees on the other side of the ledger. Okay. Now, many of the box office statements that I looked at, and maybe I'm not looking at them correctly, listed the value of club seats for purposes of revenue sharing at their face amount, $195 up to $315. Right. I believe there was a footnote in the proceedings below that there might have been a technical error in that particular line item. It was throughout the season in these revenue sharing statements. Right. The testimony is clear, Your Honor, that that is the way that the books and records have identified. They have separated out the amenity fees from the right to enter in view. In fact, on the ticket itself, the club ticket itself, there is that separation, and that is reinforced with the books and records. But what you're saying, what your argument is, is that these box office statements, prepared according to NFL rules, should dictate how we should look at the taxable portion of the ticket price. As I look at the box office statements, and I think it's true throughout, they all list the face value of the club seats, and those weren't corrected. Somebody might have testified this was a mistake, but those are the bearer's books and records, I think. Well, the books and records, Your Honor, I don't have those sheets in front of me, but the books and records with the testimony explain that there is a separation. In fact, the ALJ, who heard all this testimony, saw those box office statements, on pages three and four of the opinion, said that, yes, there is a separation out of these two items. There is a separation out that the bearers have done on the right to enter in view, and there's a separation out of the amenity fees. That was never an issue below. It was never disputed. As I understand it, there is no Department of Revenue, County Department of Revenue regulation or notice or bulletin or rulemaking that defines this. It's just sort of out there. That's correct, Your Honor. And the county identified certain miscommunications at the time of the audit as to what documents were received and what discussions were had. Imagine if you were the Chicago Bears at that particular time. You see the plain language of the ordinance that says that the amounts charged are that the tax applies to the amounts to enter in view, and you have Section E that allows you to separate, and you're trying to work in that context. But in the meantime, the county is saying, contrary to any regulation, contrary to the ordinance itself, that what is taxed is a game day experience. So clearly there wasn't a meeting of the minds, if you will, as to what the county was trying to achieve during that case. But what does the phrase other charges mean, if not something other than what the Bears state the ticket price is? Right, Your Honor. So first of all, under STASCO, other charges means PSLs. So that's one example of it. But importantly, the other charges phrase not only modifies the term the right or privilege to enter in view of the amusement, so it can't just be other charges without modifying that particular term. It still has to relate to the right to enter in view of the amusement. Well, no, because it's privileged to enter, witness, or view. Right. That's the phrase. The privilege. Yes, Your Honor. But if you look at Section E, it has the other charges term as well. So you can separate out whether you call it an admission fee or an other charge in Section E. It doesn't matter whether you call it an other charge or an admission fee. In Section E, either of those charges can be separated out under Section E. Go ahead. I'm sorry. Okay. So to extend your reasoning to a rock concert at the United Center, jam productions could state on the face of the ticket everybody pays $100 to enter, whether you sit first row center or whether you sit way up in the rafters. And the privilege of sitting first row center or getting a backstage pass or having a VIP reception is not the privilege to enter the arena. It's a non-amusement service. Right. They could do that and say this is the position we take. They certainly could take that position, but then they would be subject to scrutiny, and that scrutiny may or may not withstand. They keep business records. They keep their business records and say everybody pays $100 to enter, and the rest of this is a non-amusement service. Right, Your Honor. So the difference here with the Bears is we have an established business practice through the NFL rules. With the NFL rules, what we're doing is we're sharing the amounts charged to enter and view with the other teams. Well, but let's take a different scenario. So there is an established business practice. This isn't arbitrary. I think what you're suggesting with jam is whatever they put on the document must be accepted as true. I'm not stating that. What I am stating is that the Bears not only have documentation supporting the separation, but that documentation reflects a pre-existing business practice. But that has nothing to do with the ordinance. You tell me a case that says that your business practices are going to trump the tax law. I don't need tax invoices. That's not the issue. Let me give you a different hypothetical. Opera House. I'm sorry? The Opera House. Okay. There's a section that they pay the highest price available in the Opera House. And those people, the Chicago Opera, they put a separate charge for food, better food. And they get sushi if they pay for it. And we're going to say that's worth $100. So you pay $100 to see the opera and $100 to get in line to get sushi. What's the difference between that and what the Bears are doing? Better and wider selection of food. So, Your Honor, that's where we need to connect here. Because this isn't just the idea of arbitrarily identifying a number for food or other amenities. What we're talking about here is following the established business practices. Now, Your Honor is saying, well, that's not part of the taxing statute. What is part of the taxing statute is whether the separation, which is allowed under Section E, is arbitrary. It's not a question of arbitrary. It can't be arbitrary if we're following our practices. It's not a question of being arbitrary. That's not the test. The test is whether it comes within the other charges. That's the test. And whether it comes in the exemption that's in the statute. You can follow all the business practices you want. But that doesn't mean that the taxing body can't tax you for it. Well, Your Honor, see, the other charges, they are carved out under Section E. But if food, beverages, and better seats are non-taxable for the Bears, they're non-taxable for the Lyric Opera, and they're non-taxable for jam productions, right? No, Your Honor. What we're doing is looking at the ALJ's proceedings and seeing what the issues presented there were. And in connection with those ALJ proceedings, the Bears identified how they separated those charges and that those charges were not in any way separated in some sort of arbitrary fashion. It's not arbitrary because the Lyric Opera says we're going to give you a program. We're giving you a program of the Lyric Opera. We're giving you a media guide when you come in. We're giving appreciation events. We're giving you better food. You can buy tickets if you have an extra program that comes in. Exclusive invitation to meet the opera singer, get an autograph. Ability to buy tickets to some other event at the opera house. Same thing. So why can't we make this decision, and why doesn't every other venue in the city do the same thing and say, okay, our ticket price now is going to be $50, and we're going to charge $200 for this? Your Honor, one thing that I'm fearing here is that we're rewriting the terms of the ordinance. That's exactly what the ALJ did. The ALJ was looking at these public policy issues and whether it would make sense to tax a game day experience. We're not talking game day. I'm not talking game day experience. But that's what we're doing here in terms of talking about these public policy issues. I'm trying to focus on the plain language of the statute. What's going on? My scenario is exactly the same as you have presented, and what's good for you is the case law will apply to others, won't it? It's just as Statsco applies to your license. So there is a precedence, and I'm trying to figure out why you can charge a lot more for a ticket to sit at a certain spot and get these nominal amenities, which is worth more than watching Spangleberry. Right. So, Your Honor, there is nothing in the record to suggest that these amenities are nominal. Instead, as I mentioned, if you want to have the exact same view in the stadium, you can sit on the west side of the stadium and not pay those amenities. The market, therefore, identifies what the value of those amenities are. If you would like to sit in the club seat on a 300 level and watch the game, you can pay for the amenities, or you can go on the other side. The market does that because the market is set by the fares, right? The market price. Every year they raise the prices. The team doesn't get any better. They raise the prices. Right? They are the market. There is no competition. Your Honor, there certainly is competition. Where is this? Can I? There is another football game? No, but in terms of entertainment value and entertainment dollars. I'm using your scenario. You said let's talk about that. Right. But the point is, I can choose, Your Honor, whether I want those amenities or not. And I can get the exact same right and privilege to enter and view the stadium and have the exact same view of the football action. And I can decide, do I want a ticket with the amenities and sit on the east side? Or do I want a ticket without the amenities and I can sit on the west side? But how about Justice Hyman's question, if it's good for the Bears, it's good for every other purveyor of an amusement in Cook County? Well, Your Honor, what I'm saying is with the Bears, this has gone through the ALJ process, gone through the filter. We have to be concerned about what the law is going to be and how it will apply in other contexts. And if it's good for the Bears, if the Bears can separate out the ability to purchase better food, better seats, and say that's really not subject to the amusement tax, then everybody else should be able to do the same thing, whether or not they have an agreement among their peers. So, Your Honor, with the Bears, there is separation for the reasons I've identified. You can sit on the east side or the west side. That's true at any event. There are different price tickets usually. They're not all the same. And it's not the same view. The east side is different than the west side. The sun is different. The time of the day is different. The view, whether you're behind where the players are or you're looking at the players on the sideline, that's a better view to see maybe where the Bears are rather than look at the opposing side, there's lots of different factors in where you sit. In fact, you wouldn't recognize that because the Bears charge different amounts for different seating areas. Your Honor, the stipulated record says that they're the same view. So we need to go by the stipulated record. Well, there's a view of the game, but the record also shows that different pricing, so it may be the same view, but for some reason the Bears charge a lot less to sit in nosebleed territory than they do to sit on the 50-yard line. Well, that's because at the second level of distinction with any other taxpayer out there, these prices were in accordance with established business principles. The established business principle says that those amounts for club and suite, consistent with NFL rules, and sharing the amounts charged for the privilege to enter a view needs to be at the highest ticket price. We follow that. That's why there is no differentiation as the seats go from one end to the next. We're following that established business principle. Your Honor, there's one component of the ALJ's ruling that I think is important here, in that on page four the ALJ found when trying to embrace a game day experience says that the game day experience includes more than just the privilege to enter a field and witness or view a football game. So what was happening with the ALJ proceedings is that it was recognized that there was amounts charged to enter in view and was recognized that there were separately charged amounts for amenity seats. That is the record, Your Honor, that you have. Based upon that, on page four of the ALJ's opinion, he used the term game day experience so as to capture not only the amounts charged for the privilege to enter a view, but also the amenity seats. There is nothing in the record to suggest, Your Honor, that that separation was arbitrary. As I mentioned, it is consistent with business practices. It can be separated. It was separated. That was the testimony that the ALJ heard. Are you saying that the test for us is whether it's arbitrary or not? If you can show the ALJ that it's not arbitrary, then it's not taxable. Is that right? So you keep talking about this arbitrariness. I'm trying to get a handle on it. Right. So if it's not arbitrary. If it's not arbitrary. Is that right? That's your position. If it's not arbitrary. Yes. That's the county's position, Your Honor. That's what we've been responding to is they said that these amenities are arbitrary and not separable. Those are separate items. Right, right, right. But we have met each of those requirements. Yes, they can be separated. There's a stipulation of the separate amenities in the record. It's in the record. It's a stipulated, a long list of those amenities. It's there. They can be separated. And as I mentioned, you can have an east side and a west side view. That has been stipulated that they're the same. That's in the record. And then we have the arbitrariness. The ALJ never found that there was anything arbitrary about what the Bears did. Instead, the Bears were the ones that submitted testimony as to how these charges were reached. The county in no way submitted any testimony as to arbitration. As to the arbitrary nature of this, they could have submitted some sort of expert witness or the like to say that this separation doesn't make sense. Why would we need an expert to tell us that? Because Section E allows us to separate. That is the plain language of the section. Was there an expert to tell the court in Stasko that the permanent seat license was inseparable from the ticket that you get into the stadium with? Well, they weren't reviewing an ALJ proceeding, and the court rejected the argument, as opposed to the record, that there was no separation. Here we have a record of separation. We have ALJ findings that there are separately stated amounts. Again, you're only reading half the 392E because it says separately stated for non-amusement services. So the question is not whether it's separately stated. The question is not whether it's arbitrary or non-arbitrary. The question with regard to E is whether it's a non-amusement service, and the word is service. So that is a whole different issue that you're not addressing. You keep coming back, well, we can make these separate charges. That's not the question before. Your Honor, we framed in this case, I think it's issue number four, what Section E meant. The county never responded to that. They never challenged our common sense approach to this, which is what those other charges that can be separated must be are those that are not the charges to enter in view. They basically raised that argument, but there's probably a reason why they did so, because the county would like to be able to tax game day experiences, as was set forth with the ALJ, assuming that that isn't the case. They want the burden on the taxpayer to separate out amounts charged to enter in view with amounts charged for amenity fees. So the county has been silent on objecting to our analysis of that statute, and there's reason why they have been silent for that. You may conclude, Your Honor. Thank you, Your Honor. Thank you. The west side of the stadium of that game day experience or admission or other charges, however you view it, is taxed. Everything that goes on on the west side of the stadium. As such, they're saying the ability to go inside, to get food, to use the bathroom, also is included, and it is not separable from the privilege to enter, witness, or view the football game on the east side of the stadium. Counsel just said that you haven't said anything about E and the fact that it says non-amusement services. So are you agreeing that these are non-amusement services? I'm not, Your Honor. Why didn't you respond to it? According to counsel, you didn't respond. I believe what he's referring to is his reply in Section 4. First of all, with regard to labor, the section wasn't waived because the case staff couldn't exist at the time when these proceedings began. So to say that we waived that argument just doesn't make sense. Second, with regard to the non-amusement services and non-tangible items, throughout the proceedings, we have consistently maintained that the other charges are amusement and that they are nonmal and that they are, in fact, specifically these other charges. With regard to them being non-amusement charges, there was no evidence that was ever presented that any of these items were non-amusement charges or that they had any value. No value was ever presented. So, again, we would suggest that this has not been waived because, in fact, it's never been raised before. However, I'm happy to talk about it now because, in fact, none of these have ever been put forth as non-amusement services. They are items that are out there. The bears testified at the hearing specifically that those items are all there for the benefit of their patrons. They are there for their amusement. They are part of the entertainment that day that they, in fact, conduct surveys to see how they're doing because they want to have the best game day experience for everyone. Whether you term it the game day experience, which is the bears' own term, which the ALJ used, or whether you term it other charges, which is what is laid out in Section A and E, they are part of the admissions. They are part of what gets you in. They are part of that right of entry to view, enter, witness, or view that game day. Would you agree that the bears were not arbitrary in deciding which amenities would be charged separately? Your Honor, I disagree. And the reason is, if we look at the plain language of the statute and we were to follow the reasoning of the Chicago Bears and, as Your Honor suggested, with jam productions or any of the other examples that were brought up here today, you would end up with the ability of the Opera House or jam productions or the Chicago Bears to lift the ticket price all over their stadium at $10 and then make $500 their club privilege fee, just like they've done with the luxury suites where you have $2,000 worth of tickets and $13,000 worth of amenities that they cannot back up, that they cannot present to you any evidence to support the value of those amenities. Okay. Well, I'm not familiar with the opera. I regret to admit. Do they have licensing agreements? Do they have a club membership? I don't know. Does jam productions have individual licensing agreements with people who want to purchase tickets to a Rolling Stones concert? Do they have club memberships? Unlike with the license, what I was referring to is the stated ticket price and these other bundles of amenities and how we would end up with an absurd result if you allow the different amusements around the city to decide what they were going to have as the stated ticket price and what they were going to have as other charges. However, if they were to have licensing agreements, much like the NFL, it still wouldn't matter because none of those licensing agreements with jam productions or the opera or the NFL, none of those are taxing bodies. None of those are taxing statutes here. Well, I guess my question is if the county wants to straighten this out, they don't have any regulations to guide people. They don't have anything in the ordinance that defines a special seating area. I know that there are box seats at the opera and, you know, at the symphony. I get that. But there's nothing in this ordinance. It seems to me that you have a choice when you pass this ordinance or since this ordinance was passed to make it more robust and to issue some regulations that define terms. The county didn't do that. Why should we write it in? I believe that language is already there. I believe it's the admission or other charges. And when we bring forth the case, it is the burden then on the bears to disprove and come up with any other evidence. We've been open throughout this proceedings to listening to whatever the bears had to say and to take a look at any of the evidence that they put forth. And, in fact, when they did put forth that evidence, they were given the benefit of the doubt with those luxury suites in that they were given 40 percent non-taxable with the luxury suites because they were able to show some non-amusement amenities, the food, the parking, and the beverages in those suites. Well, that raises an interesting point. Why is there a difference then between the 60 percent that the county wants to tax 3 percent of  except for the sort of quality of the amenity is sort of basically the same, better food, better drinks, better bathrooms, better heat, blah, blah, blah. Isn't the county being inconsistent just in that? Well, Your Honor, as we discussed earlier, the actual evidence that was put forth by the bears with regard to the luxury suite was that all of the suites provided food, beverages, and parking, while none of the club seats provided any of that. What came to light at the eve of trial was that, in fact, only two of the 133 luxury suites include food and beverages and parking. So, in fact, the county could go back and ask for 100 percent or 90 percent on those luxury suites. And, meanwhile, with regard to the club seats, the first time we ever heard about the parking included was on the eve of trial. That was not considered by the county, and it presumably was dismissed by the ALJ since it was not included in his ruling. Right. The luxury suites do include access to the club lounge, which has a better food selection and presumably shorter lines and better bars and stuff like that. So the other 130 luxury suites, 31 luxury suites, had access to the club area with upgraded food and beverage and restroom services and stuff like that. And also heating and air conditioning. Correct. Heating areas that are comfortable, things like that. So, if you go down the line and you list every single one of those things, and there's no regulation anywhere that gives any guidance to any organization that holds amusement or entertainment venues, and there's nothing robust about the ordinance, I still feel that it's just, you're asking us to write into the ordinance something that isn't there or add to it regulations that don't exist. Well, Your Honor, although the remaining luxury suites would have access to go down and buy additional butter food, buy additional drinks, those aren't given by the club. They aren't free. They are not included. I understand that. It's just the ability to stand in the line. I understand that. And there's been no evidence at all put forth by the barracks as to what the value of standing in the burrito line is. I don't know what that value is. And until they bring forth some evidence, that would tell me I have no way to determine what the value of that is. I don't see how you can say that. They have established a value. They said the value of sitting there and watching the game is $77.20, and the value of everything else is whatever the difference is. Are you insisting that they have a line item for every single bathroom that's in the place, for every single air conditioning unit that's in the place, for every single widescreen TV that's in the place? Well, Your Honor, on the opposite side of the stadium, as we discussed earlier, on the west side of the stadium, they also have bathrooms. They might not be as nice. They also have food lines for all sorts of food and beverages and all sorts of items. All right. And people pay for them. Right. I mean, you can pay for them. But there's no value given for standing in the hot dog line on the west side of the stadium. However, that's all included in that tax. That's all included in your admission and right to enter, witness, and view the feet. And what we're saying is on the east side of the stadium, that should also be included in your taxes to enter, witness, and view the game. There's no extra value to having shorter lines and better food than the special seating areas, the club lounge or the luxury suites. But there is a value to being in a separate area where it's more private and you can conduct a business meeting. You can have a conversation with your friends, unlike, you know, being on the west side where everybody's hanging over everything that you say. What if they just said, you know what, you're right. The food, the bathrooms, all that, none of that counts. But there is a value to having air conditioning and heating. There is a value to being sheltered. And there is a value to having the ability to conduct some sort of private or semi-private casual business or family conversation outside of, you know, the ambience of the west side. What if they just put the value on that? They'd still be able to say that there's a value to it. They can say that they would be given that opportunity to say there's a value to that. They chose not to do that and that was the bearer's burden. If they wanted to say that was not amusement. However, I would also say that when on the club tickets, they say there's a price for the seat and there's a price for the extra stuff. And what if they're acknowledging on the club seats, bathrooms, we're not going to use. No, no difference. Everybody has bathrooms. But on the club seats, you have this extra ability to be outside of the element. You have this extra ability to have conversations and walk around without having to be bundled up. And that's worth something and that's the price that we've put on the face of the club seats. So on the club seats, the county is discarding that and saying, no, no, 100%. But on the luxury suites, you're saying, oh, well, we'll give you 40%. And I just see that that is so inconsistent in the face of no regulation defining this and a totally non-robust, if that's the word, statute. Again, with regard to luxury suites, they were given credit for their non-amusement services, which were the food, the parking, and the beverages that they put forth as being given out with each of the luxury suites. They were not given credit for giving the conference. Those are all separately taxed. Those are all separately taxed, yes. And if they were not given for a private conference area, because, in fact, they are not a conference venue, they are a football stadium. And if had they presented something that was the value of this is X, well, that would have been considered by the judge. And when he considered all the evidence, he could have determined that the value of that is 20%, or 30%, or 40%, or whatever that may be. However, that was the burden that was on the bears, and the bears did not present any evidence of that. They have stated the value of it in the price of it, in the price of the license, and in the stated value on the club seat tickets. They have stated the value of it. We may not like the value of it. We may not agree with the value of it. But they have stated the value of it. It's a high value. Now, believe me, I'm a taxpayer for the county. I would love to see the county have all sorts of taxing authority. But in this particular ordinance, I don't see it. Well, your Honor, when you look at it as a whole, it comes down to the luxury suites, like the club seats, are inseparable from that actual seat, the stated ticket price. There is no way to get to your seat. You have to have a ticket, which entitles you to go to the club or the luxury box, as well as your seat. There is no value to the luxury suite or the club without your actual game, your right to enter, witness, or view the game. There's simply no value to that without it. It can't be separated out. You cannot buy them separately. Counsel, the license holder, the company that negotiates for the license, for the luxury suite, has put a value on it. They have set a market price. The bears have set a market price. There is a value to that luxury suite. Now, their guests are using one of the seats in that luxury suite. But the people who own, who have the license, they must feel that they're getting some value for that. They're getting a value for it, and they're willing to pay for it. And the bears have stated what the value of that is. So I don't see how you can say that they've not established a value. The value is high. It's a lot of money, $150,000 a year. It's a lot of money. But people are willing to pay that, and they have stated that's what the cost of this license is going to be. So how can you say there's no price associated with it? Well, Your Honor, it is a privilege to enter, witness, and view that game. If you choose not to watch the game while you are in there, or if you choose to never go to the luxury box and stay down in the club seats the entire time, or you choose to sit in the bathroom, you still have to pay for that ability to enter, witness, and view that game. It's not separable. You cannot just bring your clients there and talk to them about the game and say, you know what, I'm only using the luxury box today because I'm only going to pay that $13,000. Beyond that, Your Honor, there's been nothing that's been delineated out as that is what the bears are, in fact, doing here. No evidence has been submitted that that is the value of that non-amusement conference center-ish portion of the luxury box. That's just not been established here. Your Honor, the law favors taxation. We believe the SASCO case here is defining that, in fact, the ability to enter, witness, and view that the other charges presented here are subject to the amusement tax. We believe that the ALJ in this case did listen to all the evidence, he applied it to the law, and that his decision is proper, it was rational, and it was based on the evidence, and we'd ask you to uphold that decision. Thank you. Thank you. The case will be taken under advisement. I'd like to congratulate counsel on both sides. Your briefs were excellent. Very well done. And your arguments gave us, obviously, a lot to think about and very good arguing on both sides. Appreciate it very much. We stand adjourned. Thank you, Your Honor.